UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| EVERARDO SALINAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-4019 |
| ) | |
| STATE OF ILLINOIS, et al. ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff, EVERARDO SALINAS, proceeding pro se, filed an action under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs at the Hill Correctional Center. (Compl. Doc. 1). Defendants, COURTNEY PULSE, ANGELA SELKIRK, and KASEY KRAMER, have filed a Motion for Summary Judgment (Doc. 76) to which Plaintiff has failed to respond. For the reasons indicated herein, Defendants' Motion for Summary Judgment (Doc. 76), is GRANTED.

**I.   Background**

The Undisputed Material Facts ("UMF") identified by Defendant reveal that Plaintiff was incarcerated at the Hill Correctional Center where Defendants Courtney Pulse and Angela Selkirk, Licensed Practical Nurses (LPNs), and Defendant Kasey Kramer, a Nurse Practitioner, were employed to provide medical services to inmates. On July 30, 2021, the Plaintiff injured his foot during yard time, inconsistently claiming that he fell in a hole (Doc. 1 at ¶ 30) and that he injured it stepping on a soccer ball (Doc. 76-1 at 8). Plaintiff reported to the healthcare unit in pain,

claiming that he could not move his ankles or toes. He was examined by Defendants Pulse and Selkirk, who noted swelling and limited motion without discoloration and good circulation to the foot. "Dr. O," later identified as Dr. Osmundson, was called, and ordered an x-ray for the next available time; as well as an Ace bandage, ice, ibuprofen, restrictions from yard and gym activities, and "crutches for 1 week." *Id*. at 9. While Defendants Pulse and Selkirk admittedly provided the other modalities, Plaintiff testified that they refused to give him crutches and he was forced to hop to his cell on one foot, including on stairs. (Doc. 76-2 at 13, 20). The Defendants have each provided affidavits testifying that they "immediately" provided crutches from prison inventory and put Plaintiff on the list for the next available x-ray, which was Monday, August 2. (Docs. 76-3 at 2, 76-4 at 6).

Two days later, on August 1, 2021, Plaintiff reported to the healthcare unit stating that his foot was numb, and he could not move it. Physical exam revealed discoloration, limited mobility, and increased pain. The Defendant nurses contacted "Dr. O," who ordered Tramadol and ibuprofen, presumably for pain, and ordered Plaintiff to be transferred to an outside emergency department. There, he underwent x-ray and was diagnosed with non-displaced fractures of the third and fourth metatarsals of the left foot. The emergency department recommended a boot, non-weight bearing, elevation, Tramadol,[1] and a podiatry follow-up.

Plaintiff testified that while in the emergency department, he was offered brand-new metal crutches which the transporting officers would not allow him to take, saying he would be given crutches at Hill. (Doc. 76-2 at 22-23). Plaintiff inconsistently testified that when he returned to Hill, he was given wooden crutches both by the correctional officers and by the Defendant nurses. *Id*. at 23, 39. He claimed that the crutches were uneven, had worn cushioning, and that one

---

[1]Tramadol is an opioid agonist that may be used to treat moderate to moderately severe chronic pain in adults. Tramadol: Uses, Side Effects, Dosage, Warnings - Drugs.com

crutch was a different size than the other, causing arm, back and shoulder pain. *Id*. at 30, 38. For their part, the nurses attest that the crutches were "fully functional." (76-3 at 2, 76-4 at 2).

Upon Plaintiff's return to Hill, the nurses received orders for Ibuprofen and Tramadol and to continue Plaintiff on the boot and crutches. *Id*. at 11. On August 4, the podiatry referral was approved, and Plaintiff was seen on August 19. The podiatrist noted the apparent inconsistencies in the Plaintiff's account of the injury and further noted that the foot was healing well, with no apparent distress or deformity. Subsequent evaluations in August and September indicated continued healing, and the podiatrist advised a transition to regular shoes within weeks.

**Legal Standard**

    a. **Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 7477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial. *Id.* at 325. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with documentary evidence. *Id.* "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax*, Inc., 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 250.

As noted, Plaintiff has not filed a response to Defendant's Motion for Summary Judgment. When the non-movant does not respond to the movant's statement of facts, the non-movant concedes the movant's version of the facts. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Columbia Pictures Indus., Inc. v. Landa*, 974 F. Supp. 1, *3 (C.D. Ill. 1997). The Seventh Circuit has repeatedly held that such a rule is "entirely proper." *Doe v. Cunningham*, 30 F.3d 879, 882 (7th Cir. 1994). However, a party's failure to submit a timely response to a motion for summary judgment does not automatically result in summary judgment for the moving party. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995). It remains "the movant's burden to demonstrate that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law." *Doe* at 883. Accordingly, the district court must make the further finding that summary judgment is proper as a matter of law. *LaSalle Bank* at 392, quoting *Wienco Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992).

### b. Deliberate Indifference

"The Eighth Amendment prohibits 'cruel and unusual punishment' and imposes a duty on prison officials to take reasonable measures to ensure that inmates receive adequate medical care." *White v. Woods*, 48 F.4th 853, 861 (7th Cir. 2022) (quoting U.S. Const. amend. VIII; *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (omitting citations)). "A prison official's 'deliberate indifference' to a prisoner's 'serious medical needs' violates the Eighth Amendment." *Id.* (quoting *Farmer*, 511 U.S. at 835). In this analysis, the Court must first determine "whether a plaintiff suffered from an objectively serious medical condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc)). Next, the Court must examine the prison official's "subjective state of mind" to determine whether the official acted with deliberate indifference to the prisoner's medical needs. *Id.* at 862 (citing *Petties*, 836 F.3d at 728). "[A] plaintiff must provide evidence that an official actually knew of and disregarded a substantial risk of harm. [M]ere negligence is not enough, [and] [e]ven objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it should be known—is insufficient to make out a claim." *Id.* at 862 (quoting *Petties*, 836 F.3d at 728).

"A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994) ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both

5

be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.").

The Seventh Circuit has cautioned, however, that "[a] prisoner need not prove that the prison officials intended, hoped for, or desired the harm that transpired. Nor does a prisoner need to show that he was literally ignored. That the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 751 (internal citations and quotations omitted).

## II. Discussion

The Court considers whether Defendants Pulse, Selkirk, and Kramer were deliberately indifferent in the treatment they provided to Plaintiff. Plaintiff claims that Defendants Pulse and Selkirk should have ordered an x-ray on July 30, 2021. (Compl. Doc. 1 at ¶ 46). Defendants Pulse and Selkirk have each provided uncontradicted affidavit testimony attesting that Dr. O. ordered the next available x-ray and that the treatment they provided was "always appropriate and up to the standard of care." (Doc 76-3 at 3, 76-4 at 3). The Court may consider this evidence "because the affiants can personally testify in court concerning the subject matter of their affidavits." *Steffek v. Client Services, Inc.*, 948 F.3d 761, 769 (7th Cir. 2020) (internal citation omitted). Plaintiff has not responded, and so, does not counter this evidence. *See* Rule 56(e)(2); *Sturdevant v. Roal-Werner*, No. 11-533, 2013 WL 6472278, at *7 (S.D. Ill. Dec. 9, 2013) (granting summary judgment where plaintiff did not submit "any evidence that would contradict the Defendants' declarations."); *Shepherd v. Shah*, No. 16-333, 2018 WL 3321241, at *4 (S.D. Ill. June 6, 2018) (granting physician defendant's motion for summary judgment based on his "uncontested

6

declaration and the medical records."), *report and recommendation adopted,* No. 16-00333, 2018 WL 3303226 (S.D. Ill. July 5, 2018).

The medical records and uncontroverted affidavit testimony establish that Defendants Pulse and Selkirk examined Plaintiff, recorded their findings and relayed them to Dr. Osmundson. Dr. Osmundson ordered that Plaintiff be x-rayed on the next available date and Defendants scheduled it as ordered. There is no evidence that Defendants had the authority to order an x-ray themselves, as Plaintiff suggests, or that on July 30, they subjectively knew or should have known that different care was needed. The same applies to the claim that the nurses should have provided Plaintiff with a bed in the healthcare unit so he would not have to hobble up and down stairs on crutches. (Doc. 76-2 at 24-26). Defendants attest that the decision to admit an inmate to the infirmary is done at the discretion of the physician. (Doc. 76 at 8). Plaintiff does not counter with evidence that the nurses had the authority to admit him.

Plaintiff alleges against Defendant Kramer that Defendant failed to provide him with Tramadol ("Ultram") pain medication and threatened to withhold pain medication if he continued with his complaints. (Compl. Doc. 1 at ¶ 61). The record substantiates that on the July 30 date of injury, Dr. Osmundson prescribed ibuprofen for pain with no indication that Defendant Kramer was contacted on this date. On August 1, Plaintiff was seen in the emergency room and prescribed ibuprofen and a seven-day course of Tramadol (Ultram), to run through August 8. On August 10, Defendant Kramer prescribed an additional 21 days of Tramadol. (Doc. 76-1 at 7); (Doc. 76-5 at 2). The Nurses' Notes of August 17 and 30 document that Plaintiff was still receiving Tramadol and ibuprofen. (Doc. 76-5 at 3).

In his complaint, Plaintiff only pleads that Defendant Kramer failed to provide him with Tramadol on September 4, some 36 days after the injury. (Compl. Doc. 1 at ¶ 61). At his deposition,

he might have suggested that Defendant did not provide him pain medication in August, but this is unclear.

> Q. Early on you had the Tramadol but that only lasted for like a couple weeks or maybe a month, right?
>
> A. Yes
>
> Q. Or—did they ever continue that and give you that later?
>
> A. They discontinued—they gave it to me for a couple, what was it, like two weeks? I don't recall how long they gave it to me. Then they extended to me since I kept complaining about the pain, I don't recall the date, what it was, I kept complaining, and I went to see the physical therapist Kramer that I was complaining and she told me that if I don't -- that's all she could do, that I was already on a type of pain medication. She threatened me to cancel all my pain medication, which I believe they did stop it, I don't know if it was because of that, but she threatened me to take my pain medication if I keep complaining how I was for the pain I was in.

(Doc. 76-2 at 36).

When counsel clarified that that Plaintiff was referring to Defendant Kramer who was a nurse practitioner, not a physical therapist, the following took place:

> Q. So that was—I assume you're talking about what you discuss in your Complaint. You indicated that when you got back from the hospital she said you weren't going to get your Tramadol or something like that, right?
>
> A. Yes.
>
> Q. That was kind of back towards the beginning of this, right?
>
> A. Yeah.
>
> Q. But you were receiving your Tramadol, correct?
>
> A. Yes.
>
> Q. Miss Kramer never cancelled your Tramadol? You got it for as long as you were prescribed, correct?
>
> A. Well, once she said that they did stop it. They did stop my Tramadol. I kept complaining and they continue—they continued for another—after a couple 18 days they continued for another week or two weeks, I don't recall how many weeks after that.

(Doc. 76-2 at 37).

The only recorded gap in the Tramadol is between August 8 when the first prescription ran out and August 10 when it was renewed for an additional 21 days. Even if Plaintiff is referring to this 2-day period, something which is not clear, he does not claim that Defendant was aware the prescription had lapsed before August 10, 2021, when she re-ordered it. For her part, Defendant Kramer has provided affidavit testimony that she never withheld Plaintiff's Tramadol and never threatened to withhold it. (Doc. 76-5 at 3)

If Plaintiff is complaining that Defendant would not extend his Tramadol prescription beyond September 4, 2021, he fails to identify any medical need for the narcotic pain medication 36 days after injury. As Defendant Kramer noted on August 19, 2021, while the Tramadol prescription was still in effect, the treating podiatrist opined that the fractured his foot was "healing quite nicely." (Doc. 76-5 at 2). There is nothing here to support that Defendant Kramer was subjectively aware of Plaintiff's need for Tramadol pain medication and was deliberately indifferent in the face of it.

### III.    Conclusion

The Motion for Summary Judgment asserted by Defendants Pulse, Selkirk and Kramer is GRANTED in its entirety. The Court further notes that Plaintiff has named "John Doe #2 Medical Director" and "John Doe #4 Inside Yard Supervisor" but has not identified them as required under the Court's August 9, 2022, Scheduling Order. *See* (Doc. 22 at 4). These Doe Defendants are now dismissed with prejudice. *See Stambaugh v. Grzegorek*, No. 14-582, 2015 WL 1931465, at *3 (N.D. Ind. Apr. 28, 2015) ("[A] plaintiff cannot, 'after the statute of limitations period, name as defendants individuals that were unidentified at the time of the original pleading.'" (Quoting *Jackson v. Kotter,* 541 F.3d 688, 696 (7th Cir.2008). The Clerk is directed to close this case.

Entered this 19th day of March 2025.

                                                                               _s/James E. Shadid_
                                                                               JAMES E. SHADID
                                                      UNITED STATES DISTRICT JUDGE