IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| EVERARDO SALINAS,<br><br>　　Plaintiff,<br><br>v.<br><br>CHRISTINE BRANNON, *et al.*<br><br>　　Defendants. | Case No. 4:22-cv-04019-JEH |

**Order**

On March 19, 2025, the district judge previously presiding over this case granted Defendants' motion for summary judgment, noting that Plaintiff had not responded by the applicable deadline. (Doc. 81). Plaintiff filed a Motion for Reconsideration (Doc. 83) stating that he had submitted a timely response to the officials responsible for e-filing it, but that issues at the prison had prevented the Court from receiving it.

The Court's Text Order entered April 23, 2025, found that Plaintiff had filed a timely response, directed the Clerk to docket the summary judgment response attached to his motion, and provided Defendants with an opportunity to file a reply brief. The matter comes before this Court for ruling on Plaintiff's Motion for Reconsideration. (Doc. 83). For the reasons stated, *infra*, the motion is denied.

I

Rule 59(e) of the Federal Rules of Civil Procedure allows a court to alter or amend a judgment if the movant can show a manifest error of law or present newly

1

discovered evidence. Fed. R. Civ. P. 59(e); *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). Motions under this rule cannot be used to present evidence that could have been presented at the summary judgment stage. *Id.* Nor are such motions vehicles to advance arguments that could or should have been made before judgment entered. *U.S. v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010); *see also Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.").

## II

The facts of this case are largely undisputed.[1] Plaintiff injured his foot on the prison yard on July 30, 2021. Defendants Pulse and Selkirk thereafter examined him, contacted the prison physician, wrapped Plaintiff's foot in an ACE bandage, provided ibuprofen, and scheduled him for an x-ray. X-rays taken at the hospital on August 1, 2021, disclosed fractures to three metatarsal bones in Plaintiff's foot. Upon his return, prison medical staff prescribed Tramadol, provided a walking boot and crutches, and scheduled Plaintiff to see a specialist. The specialist later opined that Plaintiff's fractures had healed without issue.

The record discloses a dispute regarding whether Plaintiff received crutches following the July 30, 2021, examination. An inventory record Defendant Selkirk attached to her reply brief indicates that she retrieved a pair of crutches on that date. Plaintiff asserts he did not receive them until after he returned from the hospital on August 1, 2021. Plaintiff also identifies disputes regarding when Defendants Pulse and Selkirk contacted the physician and whether Defendant

---

[1] For a detailed account, see (Doc. 81).

Kramer threatened to discontinue his medications during an examination conducted August 6, 2021.

### III

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). The parties do not dispute that Plaintiff suffered from an objectively serious medical need.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. Courts defer to treatment decisions made by medical professionals unless the evidence shows that "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

A treatment decision permits an inference that the medical provider acted with deliberate indifference only when the decision constitutes "such a substantial departure from accepted professional judgment, practice, or standards, as to

demonstrate that the person responsible actually did not base the decision on such a judgment." *Petties*, 836 F.3d at 729 (internal quotations omitted). Persisting in a course of treatment known to be ineffective, failing to follow an existing protocol, delaying treatment without penological justification, and refusing to follow a specialist's recommendations may permit an inference that a medical professional failed to exercise the appropriate judgment. *Id.* at 729-30.

Nurses must "defer to treating physicians' instructions and orders in most situations . . . [unless] it is apparent that the physician's order will likely harm the patient." *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010); *Reck v. Wexford Health Sources*, 27 F.4th 473, 485-86 (7th Cir. 2022). Plaintiff argues that Defendants Selkirk and Pulse did not actually defer to the prison physician's instructions because they have not provided evidence regarding when they spoke to the physician. (Doc. 85 at 13).

A review of the medical records indicates that these defendants first examined Plaintiff at 2:10 p.m. on July 30, 2021, and that they received instructions from the physician at 2:25 p.m. (Doc. 76-1 at 8-9). Plaintiff testified that defendants told him on that date that they had contacted the physician who ordered an x-ray, gym and yard restrictions, an icepack, and ACE bandage. Pl.'s Dep. 19:16-20:4. He testified also that they provided him with ibuprofen. *Id.* 20:5-6. The record discloses no further conversations between Defendants Pulse and Selkirk between the time they sent him back to his housing unit and August 1, 2021, when officials took Plaintiff to the hospital for x-rays. The medical records and Plaintiff's testimony thus suggest only that Defendants contacted the physician shortly after the initial examination.

Assuming they did not contact the physician until later, or at all, the treatment they provided does not support a reasonable inference that they failed

4

to exercise the requisite professional judgment. To the extent that Plaintiff did not receive crutches on July 30, 2021, the record does not disclose that these defendants knew the details of Plaintiff's housing situation, much less that they intentionally denied Plaintiff crutches knowing that his foot was broken or that he would be forced to walk the alleged 300 yards between the healthcare unit and his cell.

Nothing suggests that the delay in receiving crutches caused pain greater than that normally attendant to the type of injury Plaintiff suffered or otherwise caused actionable harm. *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) ("[A] plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental."). The record also does not support a reasonable inference that Defendants were personally responsible for any other delays in receiving the prescribed treatment. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.")

The Court's Summary Judgment Order addressed Plaintiff's assertions that Defendant Kramer threatened to discontinue his pain medication on August 6, 2021. (Doc. 81 at 7-9). The order notes that Plaintiff had an active prescription for Tramadol at that time, that Defendant Kramer never canceled it, and that at worst Plaintiff had suffered a two-day lapse in receiving his medication between August 8, 2021, the date that prescription expired, and August 10, 2021, the date Defendant Kramer renewed it. *Id.* The record does not disclose that Defendant Kramer knew prior to August 10, 2021, that Plaintiff would require additional pain medication or that the officials responsible for distributing it had not done so.

The Court finds that Plaintiff's summary judgment response fails to identify a genuine dispute of material fact that requires a trial, and that Plaintiff has not

otherwise shown that the Court erred in granting Defendants' motion for summary judgment.

**THEREFORE, Plaintiff's Motion for Reconsideration (Doc. 83) is denied.**

*It is so ordered.*

Entered: January 21, 2026

s/Jonathan E. Hawley
U.S. District Judge